ARENT FOX LLP
George P. Angelich
David Wynn
Eric Roman
George V. Utlik
1675 Broadway
New York, NY 10019
(212) 484-3900

*Counsel for the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | |
|---|---|
| In re: | Chapter 11 |
| VIVARO CORPORATION, *et al.*, | Case No. 12-13810 (MG) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------ x

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF VIVARO CORPORATION, *et al.*, | |
| Plaintiff. | |
| v. | |
| GUSTAVO M. DE LA GARZA ORTEGA, GUSTAVO DE LA GARZA FLORES, ROBERTO X. MARGAIN, ROBERT K. LACY, VICTOR E. ROBLES CONCHA, PEDRO SALINAS ARRAMBIDE, HISCOX INSURANCE COMPANY, INC., AND STATE NATIONAL INSURANCE COMPANY, | Adversary Proceeding No. 15-01124 (MG) |
| Defendants. | |

------------------------------------------------------------ x

**PRELIMINARY OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO MOTION FOR AN
ORDER REGARDING PAYMENT OF DEFENSE COSTS PURSUANT TO
<u>CERTAIN DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY</u>**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession, Vivaro Corporation; STi Prepaid, LLC; Kare Distribution, Inc.; STi Telecom, Inc.; TNW Corporation; STi CC 1, LLC; and STi CC 2, LLC (collectively, the "Debtors"), through its undersigned counsel, files this preliminary objection and reservation of rights (the "Preliminary Objection") to the *Motion for an Order Regarding Payment of Defense Costs Pursuant to Certain Directors and Officers Liability Insurance Policy* [ECF No. 5] (the "Motion for Payment")[1] filed by Tarter Krinsky & Drogin LLP ("TKD") and Gustavo M. de la Garza Ortega ("Don Gustavo", and together with TKD, the "Movants"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On July 17, 2015, the Committee and Insiders agreed to mediate this adversary proceeding (the "D&O Action") before the Honorable Robert D. Drain.  Mediation is scheduled to take place on the October 20, 2015 – the obvious objective being a full and final settlement of all outstanding disputes.  The Committee has extended multiple reasonable offers to settle the Motion for Payment.  While all of the Committee's settlement proposals have thus far been rejected, it still is the Committee's hope that a consensual resolution of the Motion for Payment can be reached on or before the October 14th initial hearing or at the mediation.  In the meantime, however, the Committee is required to file this Preliminary Objection and outline the reasons why the Motion for Payment should be adjourned or denied.

2.      The Movants couch the Motion for Payment as a routine request for proceeds of the Debtors' D&O insurance policies that they believe they have an absolute and unfettered right to use immediately.  However, the Movants' litigation tactics and conduct in the Debtors'

---

[1] All terms shall have the same meaning as set forth in the Motion for Payment, unless otherwise defined.  All references to the documents filed on the Court's ECF are references to the adversary proceeding, unless otherwise indicated.

chapter 11 cases and the D&O Action present a rare set of circumstances that show this is not a routine motion.  Indeed, the Motion for Payment should be denied.

3.    First, the Motion for Payment is premature and will be moot if the mediation is successful.  On October 9, 2015, the Committee will submit to Judge Drain its confidential Mediation Statement.  The issue of payment of D&O defense costs and the subject of the Motion for Payment will be included among the issues for mediation before Judge Drain.  If mediation is successful, TKD's legal fees will be resolved as part of the global settlement.  If mediation is unsuccessful, there is no reason the parties cannot seek a consensual stipulation after the October 20th mediation.  Therefore, the Committee requests that the Motion for Payment be adjourned to November 19, 2015, the next omnibus hearing.

4.    Second, October 14, 2015 is the initial hearing on the Motion for Payment and it should be denied (without prejudice).  Scrutiny of the Motion for Payment reveals that it is not only ill-timed but also fundamentally flawed.  The Movants' request for payment of TKD's legal fees cannot be granted in the absence of evidence, appropriate disclosures, and a requisite process for, among other things, distinguishing between covered and uncovered claims and defense costs under the Debtors' D&O insurance policies.  The difference is important because TKD has represented Don Gustavo and the other D&O Defendants, as well as certain of the Debtors' insiders[2] (collectively, the "Insiders") in the Debtors' chapter 11 cases well before the D&O Action was filed, in connection with activities that are not covered under the policies.

5.    The record is so deficient that one cannot even determine who exactly is seeking relief.  The Motion for Payment identifies only TKD and Don Gustavo as "movants".  Yet, the

---

[2] The term "insider" is defined in 11 U.S.C. § 101(31).  TKD's clients include the D&O Defendants and Don Gustavo, who owns and controls the Debtors' certain insiders who are defendants in the Committee's adversary proceeding against Marcatel Com, S.A. de C.V., Organizacion Radio Beep S.A. de C.V. n/k/a Unifica Contact Media S.A. de C.V., and Progress International LLC, Adv. Pro. No. 15-01125 (MG) (the "Preference Action").

3

Motion for Payment purports to be filed on behalf of "various other individual defendants".  In the Motion for Payment, the Movants do not specify who these other individuals are.  They fail to even disclose the identity of movants in discovery responses.  Thus, it is not possible to assess whether these unspecified individuals are even entitled to coverage under the Debtors' D&O insurance policies.[3]  Further, the Motion for Payment has no supporting affidavits or declarations (not even an attorney declaration) and is devoid of retainer agreements, time records, bills, invoices, the timeframe for coverage sought, or any other information identifying defense costs attributable to covered claims and covered individuals.  Most critically, the Motion for Payment does not provide admissible evidence that payment is only sought for activities related to the Committee's claims for breach of fiduciary duties against the D&O Defendants asserted in the D&O Action (rather than the Preference Action, or claims of the D&O Defendants or the Insiders against the Debtors' estates, or any other unrelated activities outside coverage).  As such, the Movants cannot satisfy their burden and have failed to show "cause" for the relief requested.

6.      Third, the D&O Defendants' and the Insiders' conduct and litigation practice during the course of the Debtors' chapter 11 cases, as further described below, show that the Movants' arguments for "cause" in support of the relief requested are products of their own creation.  Indeed, the Motion for Payment does not contain any proof of "cause" other than reciting the Movants' conclusory allegations of entitlement and arguments that, when examined,

---

[3] Indeed, one of the D&O Defendants contends he never was a director of the Debtors.  Unknown is whether the Movants seek payment for services rendered for non-directors.

cut against finding "cause".  Moreover, the Movants contend that their vast personal financial resources will be used to fund litigation against the Committee.[4]

7.      Given these clear deficiencies, on August 31, 2015, the Committee served TKD with narrowly-tailored discovery seeking (a) documents and information from TKD; and (b) responses to interrogatories by the D&O Defendants.  Responses to the Committee's discovery requests were received on September 25.  However, TKD failed to produce any documents and failed to answer any interrogatories.  In their general objections, the D&O Defendants cavalierly stated, among other things:

> The Individual Defendants object to the Requests [and the Interrogatories] because they represent an improper attempt to conduct substantive discovery in **advance of the mediation scheduled for October 20, 2015**.

Response to Interrogatories & Response to Request for Production of Documents and Things at ¶¶ 9, attached hereto as Exhibits A and B, respectively (emphasis added).  Thus, by refusing to engage in narrowly-tailored discovery (and refusing to even identify the movants ) directed at the Motion for Payment because of the imminent mediation, the D&O Defendants effectively concede that the Motion for Payment is premature and should be heard after the October 20th mediation.

8.      Finally, the Movants' arguments for "cause" include their erroneous contention, and request for a finding, that the proceeds of the Debtors' D&O insurance policy are not property of these estates.  Contrary to the Movants' contention, the proceeds of the Debtors' D&O insurance policy are property of these estates because the Debtors are Insureds who are

---

[4] *See* Preliminary Objection *infra* note 16 (citing Leucadia Objection at 21, ¶ 42 ("[Don Gustavo, D&O Defendants, and other Insiders] **can afford to and will defend themselves vigorously in any litigation that the Committee pursues** . . . .") (emphasis added)).  The D&O Defendants' assertion that they can afford to fund their litigation efforts shows there is no prejudice to the Movants if the Motion for Payment is adjourned to a date after the Mediation or is denied without prejudice.

provided coverage, including Coverage B (Company Reimbursement Coverage) and Coverage C

(Company Coverage) under the policies.

9.      The Movants' contention in paragraph 13 of the Motion for Payment states that

the policy proceeds are not property of these estates – but that position is contradicted by their

own proposed order which provides that:

> [T]his Order is entered **without prejudice** to any party-in-interest's position
> regarding whether the proceeds of the Policy are property of the Debtors' estate,
> and all parties-in-interest reserve their rights with respect to that issue. **Nothing**
> in this Order shall be deemed to represent an adjudication of (or to have res
> judicata or precedential value concerning) the question of whether the proceeds of
> the Policy are property of the Debtors' estate subject to 11 U.S.C. § 362(a)).

Proposed Order on the Motion for Payment at 2 [ECF No. 5-3] (emphasis added).  It is unclear

how the D&O Defendants can on the one hand ask for a finding that the policy proceeds are not

property of these estates but on the other hand submit an order that is wholly incompatible with

the relief sought.

### RELEVANT FACTUAL BACKGROUND

10.     The Motion for Payment takes place against a backdrop of sharp litigation

strategies executed by TKD at the direction of Don Gustavo, the D&O Defendants, and the

Insiders in these chapter 11 cases.

11.     The Committee was duly appointed by the Office of the United States Trustee for

the Southern District of New York in the Debtors' chapter 11 cases on October 3, 2012.  By

August 2014, the Committee identified certain meritorious claims of these estates and filed a

motion seeking standing to prosecute and settle such claims against three groups of defendants:

(1) Leucadia National Corporation, *et al.* ("Leucadia"); (2) the D&O Defendants; and (3) the

Insiders ([Bankr. Case, ECF No. 547] the "Standing Motion").

12.     The only objection to the Standing Motion ([Bankr. Case, ECF No. 550] the

"Standing Objection") was filed by TKD on behalf of the D&O Defendants and the Insiders,

who were identified as "litigation targets".  However, before the hearing, the Standing Objection

was withdrawn.  The parties then entered into a series of tolling agreements, extending the

deadline to file complaints.

13.     During the tolling period, the Committee and counsel for the Insiders engaged in

settlement discussions.  TKD regularly discouraged the Committee from bringing claims, and the

tolling period was extended under constant threat of baseless retaliatory litigation by the

Insiders.[5]  In the meanwhile, during the tolling period, the Committee focused its efforts on

claims against Leucadia.  After extensive motion practice, the Committee and Leucadia reached

an $8 million settlement of claims (the "Leucadia Settlement").  As noted in the joint motion by

the Debtors and the Committee for approval of the Leucadia Settlement under Bankruptcy Rule

9019 [Bankr. Case, ECF No. 709], the $8 million Leucadia Settlement brought these estates to

the cusp of administrative solvency and set the stage for the next round of litigation to facilitate a

recovery for the unsecured creditors.

14.     Once again, no party objected to the Leucadia Settlement except the D&O

Defendants and the Insiders ([Bankr. Case, ECF No. 723] the "Leucadia Objection").  The D&O

Defendants and the Insiders aggressively challenged the settlement in order to avoid becoming

the next primary litigation targets.

15.     Stripped to its core, the Leucadia Objection was not based upon objective facts or

sound legal arguments but was a transparent attempt to scuttle the settlement and to advance the

---

[5] *See* Preliminary Objection *infra* note 16 (citing Insiders' assertions that, among other things, the Committee and its members will be sued for their breaches of fiduciary duty and other misconduct by Don Gustavo and other Insiders, but there will be no insurance policy for the Committee's and its members' defense costs and ultimate personal liabilities).

D&O Defendants' and the Insiders' self-interests ahead of the Debtors' interests, even though the individuals remained members of the Debtors' Board of Directors and owed fiduciary duties to the Debtors and creditors.  The Leucadia Objection was presented without factual bases, without sworn statements, and without any documentary support.  It consisted of rank speculation, innuendo, and *ad hominem* attacks on the Committee, its members and professionals, and the Debtors and their professionals.[6]

16.    The D&O Defendants and the Insiders then demanded extensive discovery of the Debtors, the Committee, and the Committee's members.  TKD's deposition requests were part of a fishing expedition that disrupted the Debtors' Chief Financial Officer's family summer vacation and interfered with the Committee Chair's business and international travel plans.  Overall, TKD's discovery caused the Debtors and the Committee to incur hundreds of thousands of dollars in legal fees and other expenses responding to the Leucadia Objection and related litigation and discovery.

17.    The D&O Defendants' litigation tactics even included the filing of a motion to convert the Debtors' chapter 11 cases to chapter 7 ([Bankr. Case, ECF No. 768] the "Motion to Convert").  The unambiguous intent of TKD (and the parties it represents) has been, and continues to be, to frustrate the creditors' recoveries and to cause delay and undue expense to the Committee and these Debtors' estates.[7]

18.    Ultimately, TKD's costly discovery yielded nothing.  The legal arguments were meritless and then abandoned.  Accordingly, on July 16, 2015, a little over nine (9) hours before

---

[6] The D&O Defendants' post-bankruptcy activities and litigation tactics are among the breaches identified in the Committee's adversary proceeding against the D&O Defendants (the "D&O Action"), which was filed on July 10, 2015.  Claims arising out of those acts fall outside of the Debtors' D&O insurance policies.

[7] *See* Preliminary Objection *infra* note 16 (citing Insiders' assertions that, among other things, Don Gustavo and other Insiders will engage in endless litigation against the Committee and its members, leaving no recovery to the Debtors' estates, to the detriment of the Debtors' creditors).

the start of the evidentiary hearing on the Leucadia Settlement – following four months of painfully circular settlement discussions, litigation, discovery, and posturing – the D&O Defendants and Insiders (a) withdrew the Leucadia Objection, with prejudice [Bankr. Case, ECF No. 771]; and (b) withdrew the Motion to Convert, stating it "will not file another motion based upon any facts known or unknown in existence as of July 16, 2015" [Bankr. Case, ECF No. 772].

19.     In the face of these failed tactics to derail the Leucadia Settlement, the D&O Defendants agreed to mediate the newly filed D&O Action.  But their legal posturing continued. First, a mere six (6) days after scheduling the mediation, in the Motion for Payment, they openly advise this Court that they have "significant reservations" about the upcoming mediation, stunningly foreshadowing a failed settlement effort.  Motion for Payment at ¶ 23.  Second, and despite active participation in these Debtors' chapter 11 cases, the D&O Defendants and TKD have refused to "acknowledge" (as opposed to "accept") the service of the D&O complaint and second summonses on the D&O Defendants.  The D&O Defendants demand that the Committee proceed with the extraordinary time and financial commitment of Hague Service on the foreign defendants.[8]

20.     The mediation was scheduled and confirmed by the parties on August 19, 2015, but six (6) days later on August 25, 2015 the D&O Defendants filed the Motion for Payment – the purpose of which is to fund litigation aspirations.

---

[8] The Committee reserves all of its rights and arguments to later on contend that it did not need to serve in accordance with the Hague Service Convention.  See Committee's Motion to Authorize the Retention and Payment of International Process Servers to Comply with Service under the Hague Convention [Bankr. Case, ECF No. 797]. Nothing in this Preliminary Objection should be construed as an admission or waiver of the Committee's factual or legal rights, claims, or arguments.  It is the Committee's contention that the defendants have all been properly served and it thus reserves its rights on whether Hague Service is necessary at all.  But this issue is not being placed before the Court at this time.

21.     On August 27, 2015, the Court issued an order which directs that no answer or responsive pleading by the D&O Defendants is due until further order of the Court.[9]  As a result, there is nothing for the D&O Defendants to do, aside from preparing for and attending the mediation.  Tasks that must be largely completed by now as their Mediation Statement is due this Friday, October 9, 2015.

22.     On October 7, 2015, TKD, on behalf of the D&O Defendants and the Insiders, filed a *Limited Objection to the Motions of the Official Committee of Unsecured Creditors for Orders Authorizing (I) Retention and Payment of International Process Servers Without Further Order of the Court and (II) Retention and Payment of Experts Without Further Order of the Court* [ECF No. 804] ("Limited Objection to Hague and Experts Motions").  The Limited Objection to Hague and Experts Motions seeks to derail the Committee's efforts to move the D&O Action and Preference Action forward in a responsible, efficient and timely way.  In effect, the Insiders second-guess the Committee's decisions regarding (i) when and how to effectuate service of process; and (ii) when and how to present its case (whether in front of this Court or a mediator) by using a highly-respected expert in a way that clearly reinforces and conclusively establishes liability and damages for breaches of fiduciary duty that are outlined in the D&O Complaint.  The Committee's decision to retain a process server and an expert are completely prudent, necessary and in the best interests of these estates.  The Limited Objection to Hague and Experts Motions has only one true purpose – to increase the costs to these estates in the forlorn hope that doing so will somehow slow down or result in the abandonment of claims against the Insiders.

---

[9] *See* Order Regarding Scheduling of Defendants' Motion for Payment at 2 [ECF No. 6] (the "Scheduling Order").

10

23.     It is in the context of aggressive, costly, and protracted litigation that the Movants

seek authority to use the proceeds of the Debtors' D&O insurance policies to fund their legal

fees.  If past is prologue, the D&O Defendants seek to have access to funds to fuel an ever-

shifting, hyper-aggressive, litigation agenda that, so far – has not served to protect the directors

and officers but has rather fueled quixotic litigation strategies, and enabled instances of colorable

post-petition breaches of their fiduciary duties (as alleged in the D&O Complaint) and other

conduct that should not be paid for using the D&O insurance policies.  Therefore, the Motion for

Payment should either be adjourned or denied.

## PRELIMINARY OBJECTION

### The Motion for Payment Is Premature

24.     The Motion for Payment is premature.  In the absence of any evidentiary support

or record, and without identifying the actual movants with specificity, there is no point for this

Court to spend additional time and resources to address the Motion for Payment – a mere one

week before the mediation.  Indeed, if successful, the mediation will render the entire Motion for

Payment moot, resolving both the D&O Action and payment of TKD's fees and costs incurred in

connection with the D&O Action.[10]

25.     Alternatively, even if the mediation is not successful, there is still no reason both

the attorneys' fees and a dispute concerning service of process cannot be resolved so that the

merits of the D&O Action can be adjudicated expeditiously and without delay, while Hague

---

[10] With respect to a question why the Motion for Payment cannot be addressed now (if the Committee is willing to
address payment of TKD's fees after a failed mediation), the answer is threefold.  First, the record does not support
the relief requested.  Second, TKD has refused to make any reasonable proposal to the Committee concerning
procedures for monitoring expenditures and payment of TKD's fees.  Third, the Committee believes that – absent a
compelling reason – the focus of all the parties until October 20, 2015 should be on mediating and settling the D&O
Action, rather than securing payment of TKD's fees.

Service in Mexico is completed over the next six to eight months, should it, in fact, prove

necessary.[11]

**TKD Refused the Committee's Proposal to Avoid Unnecessary**
**Motion Practice and Expressed "Significant Reservations" Regarding Mediation**

26.     Any suggestion that TKD or the D&O Defendants may be prejudiced by deferral

or denial of the Motion for Payment after the mediation or once service issues are resolved is

unavailing.  The D&O Defendants are under no deadline at present to respond to the

Committee's complaint, as stated in this Court's Scheduling Order.  The only expenses the D&O

Defendants may incur are preparation for mediation, which should be mostly completed by now.

Rather than opting for a consensual mediation process that could result in a global settlement,

however, the D&O Defendants are strategizing how to pay for months of their harmful litigation

strategies thus far and how to afford litigation after mediation (even though they have previously

represented that they could afford to pay for litigation using their personal resources).  The

Movants' desire to secure payment of TKD's fees based on the Motion for Payment is

prejudicial to these estates – and contrary to the D&O Defendants' previous contentions on the

record before the Court that "they seek to protect these Debtors".

**The Motion for Payment Lacks Evidentiary Support**

27.     The Motion for Payment is incurably flawed.  Most pointedly, it is not supported

by an affidavit or declaration of a single D&O Defendant.  Like TKD's prior objections, the

---

[11] Again, this is not an issue before the Court today, but under controlling law, TKD is an authorized agent for service of process on the defendants as a result of TKD's active participation and litigation on behalf of these defendants in the Debtors' chapter 11. *See Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 395 (S.D.N.Y. 1993) (holding counsel was impliedly authorized to receive service for foreign creditor where counsel was active member of creditors' committee, attended meetings, participated in sub–committee, commented on and requested amendments to plan of reorganization, and reviewed and commented on the complaint filed in adversary proceeding presenting nearly identical issues); *In re Reisman*, 139 B.R. 797, 801 (Bankr. S.D.N.Y. 1992) ("When a defendant takes an active role in a Chapter 11 case and appears through counsel in a proceeding integrally related to the case, such counsel is implicitly authorized to receive process for the defendants.").  TKD's active participation exceeds that of the defendants in those cases.

Motion for Payment is based solely on counsel's legal argument, together with unsupported

statements of entitlement to relief.  Indeed, even the Motion for Payment conflicts with the

proposed order submitted.  *See supra* paragraph 10.  Not presented to the Court are retainer

agreements, invoices, statements, time records, claims seeking reimbursement of fees or

expenses by TKD, or any evidence in any fashion that allows one to discern payment is actually

sought for covered claims for covered individuals under the Debtors' D&O insurance policies.[12]

28.      In the absence of any tangible evidence, the Court, the Office of United States

Trustee, the creditor body, the Debtors and the Committee cannot even begin to determine what

services were performed by TKD on behalf of the D&O Defendants, let alone those that may be

entitled to reimbursement under the Debtors' D&O insurance policies.  In light of TKD's

massive amount of hyper-aggressive litigation activities unrelated to the D&O Action, the

Motion for Payment lacks a competent record.  At best, the Motion for Payment could only result

in an advisory opinion that some defense costs ultimately may be chargeable to the policies.[13]

The parties would still need to craft a process whereby TKD's invoices are reviewed and paid in

some orderly way that affords parties-in-interest some due process notice.  Despite requests from

the Committee, TKD refuses to consent to – let alone articulate – a process to protect these

estates and provide parties with notice and a process for payments.  Therefore, this entire

---

[12] In contrast, in *MF Global*, with respect to motions seeking authority to use proceeds of insurance policies to pay defense costs, and after significant amount of briefing and submissions of statements and memoranda of law, and a declaration, the Court was advised that lawyers submitted claims for reimbursement or advancement of legal fees and expenses. *See In re MF Global Holdings Ltd.*, 469 B.R. 177, 183 (Bankr. S.D.N.Y. 2012).

[13] TKD cannot argue that it is entitled to payment under the policies for all work performed to date and without being subject to careful scrutiny and detailed bifurcation of services.  By the same token, the Motion for Payment is not a tool to provide TKD an open line of credit to pay itself and diminish the value of the policies.  Movants must not only be identified but also present admissible evidence of covered work and distinguish tasks unrelated to claims covered by the policies.  In the event that TKD may cure these evidentiary deficiencies before the initial hearing on the Motion for Payment, by coming forward with admissible evidence, the Committee reserves its right to request discovery concerning such evidence and any related issues.

undertaking should be dealt with after mediation (only if unsuccessful) – when the parties will have more time to deal with past invoices and prospective invoices and construct a process.

29.     If the Motion for Payment is not denied outright, to flush out substantive objections, TKD should be required to respond to the Committee's August 31, 2015 discovery demands.  This will reveal critical information.  Discovery sought included who are the movants under the Motion for Payment, their contractual right to payment under the policies, TKD's retainer agreements, if any, hourly rates, billing protocols, and protocols for distinguishing between work that may or may not be covered under the Debtors' D&O insurance policies.  To date, TKD refused to respond to the Committee's document requests, and the D&O Defendants refused to answer the Committee's interrogatories.  According to their general objections to the Committee's August 31, 2015 discovery demands, the D&O Defendants refuse to participate in discovery in advance of the mediation, which only serves to further validate the Committee's position that the Motion for Payment is premature and should not be heard until after the mediation.  Thus, the Court should adjourn consideration of the Motion for Payment until full disclosure is made.  There is no reason why the Movants cannot respond after the mediation.  By then, the Committee hopes the dispute could be resolved through mediation or consensual stipulation.

**Proceeds under the Debtors' D&O Insurance Policies Are**
**Property of these Estates and Must Be Protected for the Benefit of these Estates**

30.     Irrespective of when the Motion is heard, any order allowing the D&O Defendants to draw against the Debtors' D&O insurance policies needs to be properly documented and supported to protect these Debtors' estates.  Without denying or limiting the payment of defense costs to TKD, these Debtors' estates stand to be harmed as the proceeds to the Debtors' D&O insurance policies (which are property of these estates providing coverage for

14

the Debtors) will be diminished.  As these are "wasting policies", there must be checks and

balances and appropriate process for a determination of what may or may not be covered under

the policies.

31.    It is well-settled that insurance policy of a debtor are property of the debtor's

estate.  *In re MF Global Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012) ("[I]t is well-

settled that a debtor's liability insurance is considered property of the estate.").  The proceeds of

the debtor's policy that provide direct coverage to a debtor are the debtor's estate property,

which is protected by the automatic stay under the Bankruptcy Code.  *See In re MF Global*

*Holdings Ltd.*, 469 B.R. 177, 190-91 (Bankr. S.D.N.Y. 2012) ("In cases where liability insurance

policy provide direct coverage to both directors and officers and debtors, courts have held that

'the proceeds will be property of the estate if depletion of the proceeds would have an adverse

effect on the estate to the extent the policy actually protects the estate's other assets from

diminution.'") (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)

(citing *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004)).

32.    Under the Debtors' D&O policies, the Debtors are Insureds who are provided

coverage, including Coverage B (Company Reimbursement Coverage) and Coverage C

(Company Coverage), for, among other things, claims made against the Debtors.  In addition to

claims asserted in the D&O Action, a number of claims, including claims for indemnification,

have been asserted against the Debtors by their directors, officers, and employees – and the face

value of all claims asserted exceed the D&O policies.[14]  Thus, the Committee respectfully

requests that the Court either deny or limit the amount of defense costs that may be advanced to

TKD under the Debtors' D&O insurance policies.  Close monitoring of any draw down on the

---

[14] The D&O Action also includes claims that do not appear to implicate any coverage.  Accordingly, work related to these claims need to be separated from covered claims.

policies is required to prevent diminution of the policies and to preserve a course of recovery for the Debtors' estates for covered claims against covered individuals.

**TKD's Conduct, Pattern and Practice Require Denial of Motion for Payment, and Movants Thus Have Failed to Demonstrate "Cause" to Lift the Automatic Stay**

33.      Scrutiny of TKD's Motion for Payment is particularly warranted here in light of TKD's long history and continuing pattern of extreme and hyper-aggressive litigation tactics in these chapter 11 cases.  As alluded to above, as counsel for the Insiders, TKD filed and prosecuted multiple objections only to withdraw them when forced to defend their positions. The publicly known examples consist of the Standing Objection, Leucadia Objection, and Motion to Convert.[15]  Their tactics continue – TKD just heaped its newly minted Limited Objection to Hague and Experts Motions on the Committee without any advance notice or even a phone call to address or attempt to resolve their concerns.  It is yet another effort to cause delay and frustrate efforts towards an expeditious resolution of these cases.

34.      Moreover, TKD's extreme conduct already has imposed significant costs on these estates and wasted valuable time and resources and shows that "cause" should not be found to lift the automatic stay.  Thus, the Committee is concerned that TKD will continue its offensive and wasteful litigation tactics unless proper limitations are established.  These activities have included TKD's threats directed to the Committee, its members and counsel, who were even threatened that if the D&O Action itself was filed, there would never be a settlement and counterclaims would be asserted and pursued.[16]

---

[15] None of TKD's positions were ever supported by client affidavits or a witness but always argument by counsel only.

[16] *See* Leucadia Objection at 3 n.4 (implying the Committee and its members will be consumed by defense costs, which statements about alleged breaches of duty by the Committee had no support in fact whatsoever); Leucadia Objection at 17 n.10 (again alleging breaches of duty by the Committee had no support in fact whatsoever); Leucadia Objection at 21, ¶ 42 (threatening lawsuits against the Committee).  *See also* Motion to Convert at 12, ¶ 20 (stating that the D&O Defendants can afford costly litigation directed against the Committee).

35.     It is precisely because of these threats that the Committee requests that the Court

protect the Debtors' D&O insurance policies and not let them become an unregulated $10

million legal defense fund for the benefit of TKD and the Insiders that once depleted will no

longer be available to these estates.  The fact that TKD and the Insiders already expressed

"significant reservations" concerning the upcoming mediation underscores a discernible pattern

of the D&O Defendants.

**Scrutiny of TKD's Invoices, Cap on Fees, and Process for Review Are Necessary**

36.     Given TKD's extensive work for unrelated activities and sharp litigation

practices, and that most of TKD's legal fees and expenses incurred to date are outside coverage

provided under the Debtors' D&O insurance policies, any order for payment of fees and costs

should include a cap to protect the Debtors' interests in their policies and contain procedures for

a determination whether: (a) the parties represented by TKD are within the class of Insured

covered by the D&O policies; and (b) TKD's work is related to the D&O Action.  Importantly,

TKD's bills and invoices must be scrutinized and bifurcated by activities covered or not covered

by the policies.

37.     TKD has offered no procedures for review of TKD's requests for payment or for

allocation of funds under the Debtors' D&O insurance policies.  The Court should therefore

direct the parties to confer and seek to agree on procedures for monitoring expenditures and

allocation issues.[17]

38.     TKD should, among other things, be required to submit monthly invoices to the

Debtors and the Office of United States Trustee containing the following information: (a) hourly

rates for each time keeper charged for work concerning the D&O Action; (b) detailed time

---

[17] *See, e.g.*, *In re MF Global Holdings Ltd.*, 469 B.R. at 197 (directing counsel for the parties to confer and seek to
agree on procedures for monitoring expenditures and if counsel cannot resolve the issues, a hearing should be
scheduled on the matter).

records setting forth fees and expenses incurred in connection with covered claims in the D&O

Action; and (c) documents supporting any disbursements.  The Committee should be apprised of

the monthly burn rate of the policy and other protections that ensure transparency and assurance

that appropriate caps can be put in place and enforced.

### SUGGESTED RESOLUTION

39.      As a practical matter and to avoid burdening this Court with their unnecessary

motion, the Committee's counsel made several attempts to resolve the Motion for Payment

consensually as a way to save money for all parties and will continue to do so in the hope that an

initial hearing on this dispute will be averted altogether.

40.      However, if the parties are unable to reach agreement by the initial hearing on

October 14, it will likely be resolved in a successful mediation on October 20, 2015.  Therefore,

the Committee requests that the Motion for Payment be adjourned or denied (without prejudice)

for the reasons outlined above.

41.      The Committee also requests that TKD and the D&O Defendants and Insiders

consider the following two (2) alternative resolutions:

A.) **Acceptance of Service of Process**:  After the service of process issue is resolved and

all D&O Defendants and Insiders (in both actions) have acknowledged, accepted or

received service, it is requested that the Court establish a quarterly cap of $50,000 for the

prospective payment of TKD's fees in connection with the D&O Action.  There should

be a careful vetting process for reasonable amounts incurred to date that are properly

documented as related to the covered D&O claims which would be subject to review by

the Debtors and the Office of United States Trustee.  Fees incurred up to October 20,

2015, would also be subject to review and capped at $50,000.  Accepting service of

process will save theses estates a significant sum and time.  However, until service is

accepted, there is really not much, if anything, that the D&O Defendants need to do.

B.) **D&O Defendants Require Hague Service**:  Until such time as the service issue is

resolved and TKD is required to address the D&O Action on the merits, the allowed

payment should be no more than $10,000 prospectively for TKD's fees per quarter and

should include a process for review of any request for payment.  Again, there should be a

careful vetting process for amounts incurred up to October 20, 2015, which would be

capped at $50,000 after review by the Debtors and the Office of United States Trustee.

42.      Both options will also require due process and notice to the Committee and

information about services provided and fees and costs incurred.  The Committee is hopeful that

one of the above two settlement options will be reached by the time of the hearing on the Motion

for Payment.  The Committee understands that the Movants plan to file a reply to this

Preliminary Objection, the Committee is hopeful no reply is necessary because an agreement

could be reached on one of these proposed options before the initial hearing.

## RESERVATION OF RIGHTS

43.      In light of the issues and concerns raised by the filing of the Motion for Payment,

the Committee reserves its right to submit a supplemental objection, surreply, or request for an

adjournment based on, among other things, TKD's failure to produce any documents and the

D&O Defendants' failure to answer the Committee's interrogatories.  The Committee also

reserves its right to cross-examine any witnesses presented at any final hearing on the Motion for

Payment.  The initial hearing should be treated as a status conference on the issues raised herein.

## **CONCLUSION**

For the reasons set forth above, the Committee respectfully requests that the Court

adjourn this matter, or deny the Motion for Payment in its entirety, or limit the payment of

defense costs to TKD by placing a cap and setting forth a process for review of any request for

payment by TKD, and grant any further relief as appropriate under the circumstances.

Dated:   New York, New York            *Counsel for the Official*
         October 7, 2015               *Committee of Unsecured Creditors*

                                       ARENT FOX LLP


                                       By:    */s/ George P. Angelich*
                                              George P. Angelich
                                              David Wynn
                                              Eric Roman
                                              George V. Utlik
                                              1675 Broadway
                                              New York, NY 10019
                                              (212) 484-3900