HEARING DATE: October 14, 2015
HEARING TIME: 2:00 p.m.

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Linda Roth, Esq.
Rocco A. Cavaliere, Esq.

*Attorneys for Movants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| VIVARO CORPORATION, et al. | Case No.: 12-13810 (MG) |
| Debtor. | (Jointly Administered) |

-------------------------------------------------------------x

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF VIVARO CORPORATION, *et al.*, | |
| Plaintiff. | |
| v. | |
| GUSTAVO M. DE LA GARZA ORTEGA, GUSTAVO DE LA GARZA FLORES, ROBERTO X. MARGAIN, ROBERT K. LACY, VICTOR E. ROBLES CONCHA, PEDRO SALINAS ARRAMBIDE, HISCOX INSURANCE COMPANY, INC., AND STATE NATIONAL INSURANCE COMPANY, | Adv. Pro. No. 15-01124 (MG) |
| Defendants. | |

-------------------------------------------------------------x

**REPLY TO OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION FOR AN ORDER REGARDING PAYMENT OF
DEFENSE COSTS PURSUANT TO CERTAIN DIRECTORS
AND OFFICERS LIABILITY INSURANCE POLICY**

TO:   THE HONORABLE MARTIN GLENN
      UNITED STATES BANKRUPTCY JUDGE:

Gustavo M. de la Garza Ortega, Gustavo M. de la Garza Flores, Roberto Margain, Robert Lacy, and Victor Robles, in their individual capacities (the "Defendants") in the above-referenced adversary proceeding, together with their counsel, Tarter Krinsky & Drogin LLP ("TKD", together with the Defendants, the "Movants"), hereby file this reply (the "Reply") to the objection of the Official Committee of Unsecured Creditors (the "Committee") to the motion regarding payment of defense costs under a certain insurance policy (the "Motion"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. In recognition of the fact that the law on payment of defense costs is well established, the Committee consciously disregards the abundant case law cited by the Movants in the Motion, and instead attempts to divert the Court's attention away from the law, by attacking the Defendants and TKD in their incendiary Objection.

2. For the reasons set forth herein, the Motion should be approved in its entirety.

## RELEVANT BACKGROUND

3. The Motion includes a correct recitation of the necessary background, including excerpts from the Policy that are relevant to a disposition of the Motion. The Objection, on the other hand, contains a "background" section, which contains the Committee's revisionist perspective. We will not burden the Court with an exhaustive response to the alleged factual background but will correct any misstated relevant facts in our arguments below.

## REPLY TO OBJECTION

4. Movants respectfully request that the Objection be denied in its entirety for the following reasons.

### A. The Proceeds from the Policy Are Not "Property of the Estate"

5. The Committee states in paragraph 31 of its Objection that "it is well settled that insurance policy of a debtor are property of the debtor's estate", but this statement misses the mark. The Movants do not take issue with the proposition that an <u>insurance policy</u> is "property of the estate", but as noted in the Motion, the majority of courts have found that the <u>proceeds of a D&O policy</u> are not part of the estate of a bankruptcy corporation where its officers [or directors] were the beneficiaries of the policy. See Motion, ¶ 10 -12 (citing cases). The Committee fails to distinguish any of the cases cited by the Movants for this unremarkable legal proposition.

6. In sole support of their proposition that proceeds of a policy are "property of the estate", the Committee cites to dicta in <u>In re MF Global Holdings Ltd</u>, 469 B.R. 177, 190-91 (Bankr. S.D.N.Y. 2012), in which the Court stated "in cases where liability insurance policy provide direct coverage to both directors and officers and debtors, courts have held that 'the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution". Aside from indemnity claims filed by the Defendants against the Debtors' estates, the Committee has not alleged that any other claims have been filed against the Debtors which may implicate Coverage B and Coverage C of the Policy. As the Court is well aware, the Court in <u>MF Global</u> made no finding that insurance proceeds are "property of the estate", and instead granted directors and officers the right to defense costs by lifting the automatic stay. See <u>MF Global Holdings Ltd.</u>, 469 B.R. at 187 ("reasonable

defense costs should be paid on behalf of the Individual Insureds whether or not the policy proceeds are property of the estate").

7. While the Court in MF Global did not directly address this legal issue, in BH S&B Holdings, LLC, et al, Case No. 08-14604 (MG), this Court found that "The automatic stay imposed by 11 U.S.C. 362(a) does not bar the payment of Movants' Defense Costs because the proceeds of the D&O Policies are not property of the Debtors' Estates", also finding that "In the alternative, if the proceeds of the D&O Policies can be deemed an asset of the Debtors' Estates, the Court orders the automatic stay imposed by 11 U.S.C. 362(a) lifted to permit payment of Movants' Defense Costs under the D&O Policies. A copy of this Court's order in BH S&B is annexed hereto as **Exhibit A**.

8. As the Objection fails to refute or distinguish the numerous cases cited in the Motion, in which courts have found that proceeds of the insurance policy are not "property of the estate", the Movants respectfully request that the Court make a finding that the proceeds of the Policy are not "property of the estate".[1]

9. Furthermore, the Committee has no response to the ample case law on defense costs cited elsewhere in the Motion, including paragraph 20 of the Motion in which the Movants cited what appears to be a universal view that a "priority of payment" provision, which is included in the the Policy, must be given effect. In other words, even if the Court held that the Debtors' estates' rights under Coverages B and C (despite the fact that there have been no claims against the Debtors other than the related indemnity claims) give the estates' some property right in the proceeds, the Court would still be obliged to conclude that the "priority of payment" provision in the Policy cannot be disregarded.

---

[1] The proposed order attached to the Motion includes bracketed language regarding the "property of the estate" finding, because the Court in MF Global, deferred that ruling based on the circumstances of that case, and found in the alternative, that "cause" existed. In BH S&B, the Court found that proceeds are not property of the estate.

10.     For the foregoing reasons, this Court should approve the Motion because either the insurance proceeds are not property of the estate, as indicated by the majority of cases that address the issue, or because the "priority of payment" provision compels payment of Defense Costs.

### B.     Cause Exists to Lift the Automatic Stay, to the Extent it Applies

11.     In recognition of the fact that the Committee has no legitimate legal basis to object to the Motion, the Committee attempts to create equitable reasons why "cause" does not exist under section 362(d) to grant the Motion, by citing to (i) the alleged deficiencies in discovery responses to the Committee's requests of documents and interrogatories, (ii) the Committee's "reasonable offers" to settle the Motion, (iii) the alleged premature nature of the Motion in light of the upcoming mediation, (iv) the fact that Don Gustavo and certain affiliates of Don Gustavo (the "Entities") dared to challenge a major settlement in these cases that provides little to no recoveries to non-professional administrative creditors, and no recovery to priority creditors and unsecured creditors, (v) conjecture that the Defendants do not want to settle these cases because they used the words "significant reservations" in regards to the mediation, and (vi) a need for a "vetting" process for TKD's invoices. These arguments are ludicrous and must be rejected.

#### i. The Committee Propounded Improper Discovery Requests and Interrogatories Designed To Delay Adjudication of this Motion

12.     As if an incendiary, unprofessional and wasteful twenty page objection to a routine motion was not enough, the Committee wasted additional estate resources in serving the Defendants with discovery requests and interrogatories related to the Motion. In proceeding in this fashion, the Committee attempts to create some type of argument that there needs to be discovery, thereby warranting a further delay in the hearing. It is remarkable that the Committee consistently suggests in their Objection that the Court needs to limit Defense Costs so as to "preserve" an alleged estate

asset, while at the same time, wasting actual estate resources by spending unknown thousands of dollars in objecting to a routine Motion, and propounding needless discovery. Unlike a settlement motion under Rule 9019, the only "evidence" the Court needs to review is the Policy, the relevant portions of which are attached to the Motion.

13. TKD's invoices, retainer agreements, and time records (which contain sensitive and confidential attorney-client information), requested by the Committee in their improper discovery, are simply not relevant to a disposition of the Motion and there is no precedent cited by the Committee to suggest otherwise.[2] TKD appropriately responded with numerous general objections to the requested discovery by the proposed deadline, as set forth in **Exhibit B**. Clearly, Hiscox, the insurance carrier, has no desire to pay for Defense Costs that may not otherwise be chargeable against the Policy. TKD had previously advised the Committee that the fees associated with the drafting of the objection to the Leucadia Settlement (and related testimony), the objection to the Standing Motion, and the Conversion Motion was charged to the Entities, not the Policy.

14. In order to provide the Court and the Committee some additional comfort that TKD has not improperly charged the Policy, from September 1, 2014 to July 17, 2015, the hearing on the Leucadia settlement, TKD accrued fees of only **$70,110.77** that has been charged to the Policy. It cannot be seriously argued that in almost 11 months of work, TKD did not work efficiently in connection with defense of the alleged claims, which included, among other things, services related to (i) the Committee's demand and related correspondence with the carrier, (ii) numerous discussions with clients, the insurance carrier, Committee counsel, and Debtors' counsel, (iii) an April 21st meeting on D&O claims and related "white paper", (iv) negotiation and execution of numerous

---

[2] We are aware of no other cases in which Defense Counsel or an Insurance Carrier Counsel, filing a routine motion for Defense Costs was required to engage in discovery related to invoices, retention agreements, and correspondence with clients and the carrier.

tolling agreements and related discussions, and (v) an initial review and analysis of the complaint filed on July 10, 2015. The small amount of fees incurred should alleviate the Committee's concerns. We are also prepared to make a representation on the record of the hearing regarding pre-July 17 fees. As a result, this information addresses the Committee's main concern that TKD is not charging the Policy for pre-July 16, 2015 work related to objections to the Leucadia Settlement and the Standing Objection (although arguably some fees could have been charged) and the Conversion Motion.

15.     Thereafter, from July 17, 2015 to September 30, 2015, less than **$115,000** has been charged to the Policy for all of the work done by TKD since the Tentative Settlement was reached with the Entities and the Defendants agreed to proceed with mediation of the D&O Claims.[3] Among other things, TKD has charged the Policy for (i) review and analysis of the complaint in July 2015, (ii) the parties' consensual work on the Mediation Order, (iii) the parties' agreement to engage in informal discovery relating to the D&O Claims prior to mediation, (iv) detailed analysis of the claims for the carrier, (v) the Committee's efforts to object to defense costs motion and seek adjournments of such motion so as to avoid having it heard, (vi) the Committee's improper attempts to serve international defendants by first class mail, (vii) numerous communications with various defendants, (viii) numerous communications with the insurance carrier, (ix) the drafting of a mediation statement, and (x) unfortunately, the fees associated with the Motion and related pleadings. All of this information is bring provided on a voluntary basis, but by no means, is it at all ordinary for Defense Counsel to provide any detail at all, because the insurance carrier is the party

---

[3] TKD has not prepared an invoice for October billings yet related to the D&O Action. Notably, the Committee's fee applications have not been publicly filed since the Fifth Interim Fee Application seeking interim allowance of fees for the period of July 1, 2014 through December 31, 2014. Thus, it is unclear what the Committee's total charges are for pursuit of D&O Litigation. However, we do know that for just the period from July 1, 2014 to December 31, 2014, Arent Fox charged $141,577.50 for "D&O Litigation". An excerpt from Arent Fox's fee application is attached as **Exhibit C**. One

that is charged with and is more than capable of reviewing counsel's time records before payment of Defense Costs under the Policy.

16. Clearly, any fees associated with post-July 17th work that has been charged to the Policy relates to the D&O Claims. If the Court requires, TKD can provide an appropriate representation on the record of the Hearing in that regard as well.

### ii. The Committee Has Not Made "Reasonable" Offers To Settle the Motion

17. TKD was initially retained in September 2014 by Don Gustavo and two other directors, and thereafter, TKD was contacted by the other defendants to represent them in connection with the defense of the D&O Claims as well. Notably, TKD did not solicit nor was it required to represent all defendants, but, on the other hand, recognized that having one firm represent all defendants could be quite beneficial to all parties, including the estates, as theoretically, less money would be spent in defense costs if one firm, as opposed to many firms, were representing the various Defendants, thereby making it potentially easier for the Committee to obtain a more favorable settlement from the carrier.[4]

18. TKD, to its own detriment, did not file a motion for defense costs in September 2014, as it would have been its right to do. In fact, TKD only filed the Motion after numerous attempts from April to mid-August 2015 to engage Committee counsel on a stipulation and order on defense costs failed. In this regard, TKD acted reasonably to preserve the Policy and avoid motion practice. The Motion notes that significant efforts to obtain a consensual stipulation were disregarded. Thus,

---

could only imagine what Arent Fox's billings are in 2015 related to the D&O Litigation. Most certainly, the charges are significantly higher than TKD's fees.

[4] TKD is a middle market firm with comparatively lower rates than Arent Fox, and through TKD's efforts in this adversary proceeding, the Committee and these estates will not contend with significant legal fees of various firms representing various defendants against the wasting policy. In fact, it is not unusual to see a directors and officers' lawsuit have three or more firms involved on the defense side, when there are six defendants.

the Committee's recent lowball offers to TKD, including unusual offers made in a publicly filed Objection[5] is simply an effort to divert the Court's attention from the Committee's prior bad faith conduct in consenting to a stipulation and order. The Committee is obviously attempting to re-create its image in this regard by approaching TKD with very low settlement offers in hopes that this Court will be convinced that they have acted appropriately in connection with this matter, and that somehow TKD's rejection of unreasonable offers is itself inappropriate.

### iii. The Motion is Not Premature In Light of the Upcoming Mediation

19.     The Committee consistently argues that because of the upcoming mediation, the Motion is ill-timed. This position lacks merit. TKD, as noted, could have filed its Motion as early as September 2014 or any time prior to the actual filing of the Motion, but instead waited until August 2015, only after its requests for a consensual stipulation were ignored or rejected, and only after fees began to escalate significantly due to significant work that was required in connection with the Court-ordered mediation. The types of services that were provided have already generally been described above in paragraphs 14 and 15 and are all reasonable and compensable under the Policy.

20.     By way of background, TKD contacted Chambers on August 10, 2015 about setting the Motion for hearing on a regularly scheduled omnibus hearing date of August 26, 2015. TKD learned from Chambers that the August 26th omnibus date had been adjourned to September 9, 2015, and therefore, the Motion would be heard that day. TKD proceeded to file the Motion on August 25, 2015 in advance of the September 9th hearing, and found out that the September 9, 2015 hearing had been adjourned without its knowledge. Ultimately, after competing correspondence with the Committee on the scheduling of the Motion, the Court entered an order scheduling the hearing for

---

[5] TKD has previously advised Committee counsel that it is unseemly to request that the Defendants waive service arguments in exchange for TKD being paid on a consensual basis. In this way, the Committee is seeking to cause a rift between TKD and their own clients.

September 29, 2015. In that same order, the Court clarified that the Defendants need not file any answer or response to the complaints, pending further order of the Court. Due to the Court's scheduling conflict, the Motion was then adjourned to October 14, 2015, which happens to be a few days prior to the mediation. In sum, TKD has been very patient in initially filing the Motion, and in waiting for the Motion to finally be heard. In the meantime, legal fees have escalated and TKD would naturally like to be paid for its services in accordance with the Policy.

21.  The Committee conveniently suggests that the issue of defense costs can be dealt with at mediation, but this is not a proper approach. TKD is counsel to the Defendants and under the Policy, Defense Costs must be paid by the carrier. The mediation's focus is on the alleged D&O claims and various defenses thereto, as opposed to the amount of and timing of payment of TKD's fees. The Committee suggests that TKD can simply wait for payment in connection with a settlement order (which likely would not be entered until late November or December 2015), in the event a mediation is successful. On the other hand, the Committee promises to work with TKD on a consensual stipulation or order if there is an unsuccessful mediation. These suggestions simply do not work and are unacceptable. First, in the event of a successful mediation, why would TKD have to wait until November or December to be paid for its services in accordance with a settlement order? Second, in the event of an unsuccessful mediation, why do the Committee and TKD have to expend additional fees negotiating a stipulation and order after mediation is concluded? If history is any guidepost, more likely than not, it will be difficult, if not impossible, for the parties to reach an agreement on defense costs, especially if the Committee actually believes that the offers in paragraph 41 of the Objection are, in fact, "reasonable". To the contrary, the Movants believe that the issue of payment of Defense Costs in connection with the Policy must be addressed prior to the October 20th mediation.

22. In contrast, while the Committee improperly seeks to limit TKD from being paid Defense Costs from the Policy, according to the July 2015 operating report, the Committee received a payment of $1,761,705 just two days after the Leucadia Settlement monies were paid into the estate. Meanwhile, other administrative claimants are not being paid and no reserves appear to have been created to protect those administrative claimants from the potential that these cases are still administratively insolvent. Adding to the potential impropriety of the payment, the Committee's professionals have not otherwise timely filed interim fee applications every 120 to 150 days as a pre-requisite to eligibility for monthly compensation. See Monthly Compensation Order, p. 5(k) ("Any professional who fails to file an application seeking approval and expenses previously paid under this Motion when due shall be (1) ineligible to receive further monthly payments of fees and expenses as provided herein until further order of the Court and (2) may be required to disgorge any fees paid since retention or the last fee application, whichever is later) and 4(j) (requiring fee applications every 120 to 150 days). A copy of the Monthly Compensation Order is annexed hereto as **Exhibit D**. It is respectfully submitted that if the Movants' requests for payment of Defense Costs in accordance with well-settled law is not approved, then this Court should consider evening the playing field by denying the Committee any further compensation at this time, and possibly disgorging fees, all as set forth in the Monthly Compensation Order.

### iv. The Committee's Position that Certain Defendants' Objection to the Leucadia Settlement Bars a Recovery on Defense Costs is Illogical and Must Be Rejected

23. The Committee seeks to bypass well-established law that has either found that proceeds are not property of the estate or that the automatic stay should be lifted to allow for payment of Defense Costs, by suggesting that because certain Defendants raised an objection to the Leucadia Settlement that payment of Defense Costs of all Defendants is somehow prohibited. Like

the rest of the Objection, there is no authority in the law for this position. The objection to the Leucadia Settlement was well-founded, and in fact, the Court determined that it could not be rubber-stamped without an evidentiary hearing.[6] Certain of the Defendants and the Entities were prepared to litigate the Leucadia Settlement on July 17, 2015 and Conversion Motion on August 6, 2015, but in light of an acceptable tentative settlement of the preference action, conditioned on the parties' agreement to proceed to and successfully conclude a mediation on the D&O Claims, certain of the Defendants and the Entities, in good faith, withdrew their objection to the Leucadia Settlement and the Conversion Motion.[7] When the parties reported the results of the July 16th tentative settlement/mediation to the Court at the July 17th hearing, the Court indicated that it had reviewed all of the documents by the parties and had taken the objection "seriously" and was prepared to conduct a full day evidentiary hearing. Thus, it was not a foregone conclusion, that after extensive cross-examination, that the objecting parties would not have successfully objected to the Leucadia Settlement. After all, it was the Committee, not the objecting parties, that had the burden of showing that an $8 million settlement of $50 million in claims which provided no recovery to unsecured creditors, was in the best interests of the estate.[8] In other words, there was a benefit to the resolution that was reached to both sides, despite suggestions by the Committee that certain of the Defendants and the Entities "abandoned" their objections at the eleventh hour.

---

[6] The Committee complains that the testimony was a waste of time and TKD required the CFO to return from his family vacation. However, it was the Committee that appeared at a status conference on June 25th and was not prepared to advise the Court as to the availability of witnesses and who agreed to the CFO's deposition on a particular day in July. Thus, any scheduling conflicts were the Committee's own doing, and in light of the expedited nature of the Leucadia Settlement, adjournments of Court-ordered depositions on particular dates was not in the cards.

[7] The Conversion Motion was well grounded in the law, and whether or not the Leucadia Settlement was approved, we believe there was a good likelihood the Court would have converted the cases, for the reasons set forth therein.

[8] The fact that there was an expense associated with the Leucadia Settlement, was a direct result of the Committee's failure to obtain a price that would provide a recovery to creditors, coupled with overstaffing, including 2 attorneys and a financial adviser at every deposition, and numerous attorneys working on supporting papers.

24.     Further, the Committee takes offense to various statements made in the objections to the Standing Motion and Leucadia Settlement in which certain Defendants and Entities defended themselves against the unfounded allegations in the Committee's pleadings, by suggesting that the claims were meritless, and that they would defend themselves vigorously, including going on the offensive, if necessary. The Committee also appears to take offense that certain Defendants and Entities alerted the Court of the fact (not a mere allegation) that a Committee member was not pursued in a preference action, while almost all other recipients of transfers were sued. It was certainly not frivolous to suggest that this disparate treatment was improper. Why would this allegation about the Committee's inappropriate conduct be any more hurtful or inappropriate than the spurious and unsupportable allegations and innuendo directed to the Defendants by the Committee in its various pleadings throughout this case, including the Complaint?

> **v. The Use of the Words "Significant Reservations" in the Motion Does Not Mean the Defendants Do Not Want To Settle, As Inappropriately Suggested by the Committee**

25.     Throughout this entire case, the Defendants have desired a settlement of the D&O Claims while the Entities desired a settlement of the alleged preference claims. As an example, in exchange for withdrawing the Standing Objection, the Defendants and the Entities entered into tolling agreements, which provided them the opportunity to provide the Committee with proof of its defenses on the preference claims and alleged D&O claims, while at the same time, gave the Committee time to focus on their litigation with Leucadia. As the initial January 31, 2015 tolling deadline approached, it was Committee counsel that suggested a long extension through June 15, 2015 because of the Committee's desire to focus on the Leucadia matter. Further, in exchange for the Tentative Settlement governing the preference claims and a mediation process on D&O Claims, the Leucadia Objection and Conversion Motion filed by certain of the Defendants and the Entities

was withdrawn in good faith reliance of this mediation process. In sum, the Defendants and TKD have consistently indicated that a global resolution of this matter was needed and desired.

26. In the Motion, the Movants state that they had "significant reservations" about mediation. Those words do not at all mean that the Movants are not hopeful that mediation will be successful or that the Movants have any desire to scuttle the mediation, as repeatedly suggested by the Objection. It is unclear how the Movants could benefit from an unsuccessful mediation. A favorable settlement for both sides was reached on the preference claims, and there is a possibility that mediation of D&O Claims will be successful. The use of those words "significant reservations" merely reflects the Movants' concerns about the Committee counsel's conduct prior to the filing of the Motion, as more fully described below.

27. First, after TKD worked in good faith to schedule a mediation and work on a mediation order, the Committee continued to refuse to enter into a stipulation and order on defense costs, thereby forcing TKD to file the Motion. Indeed, Committee counsel made clear that unless TKD took steps to convince their clients to waive service of process issues, then the Committee was not prepared to let TKD get paid on a consensual basis. This is simply inappropriate and unseemly. Unfortunately, Committee counsel still does not realize how inappropriate the requests are and includes in paragraph 41 two alternative resolutions of the Motion which hinge on the Defendants giving up legal rights related to service in order for TKD to get paid. This is simply not the law, and a decision by TKD to recommend to the Defendants that they waive legal rights so as to obtain a consensual stipulation for TKD to be paid, may be unethical.

28. Second, after TKD refused to accept service in exchange for consent to use of defense costs, Committee counsel continued their inappropriate conduct. In an apparent attempt to create confusion, anger, and angst on the part of the Defendants, the Committee counsel served the foreign

Defendants improperly by mail and federal express, despite the fact that Rule 4(m) does not apply and the fact there was scheduled mediation. As the Court could imagine, the receipt of complaints at someone's home elicits an emotional reaction by the recipient, as the Committee counsel was well aware. There is no doubt that the Committee intended to create excitement, confusion, and concern, and intended to use this improper service as some type of leverage in this case. TKD was then forced to wasted considerable time and effort (at the expense of the Policy) assuring each of the Defendants that notwithstanding the Committee's conduct, that mediation was still on schedule and that a response to the complaint would not need to be filed because of the scheduled mediation. As of the filing of the Motion, the Committee had not confirmed that they would be willing to push out the answer/response deadline, thereby requiring TKD to file its August 27, 2015 letter to the Court, at which time the Court entered an order on August 27, 2015 alleviating the Defendants' concerns by stating that "the Defendants' time to file answers or responsive motions to the complaints that the Defendants' addressed in their correspondence to the Court regarding the scheduling of the Motion shall be adjourned pending further order of the Court".

29.     Third, as is their right, the Committee has a very optimistic view of the strengths of the D&O Claims, while on the other hand, the Defendants and the carriers are very optimistic about the defenses. The use of the word "significant reservations" in part, relates to our concerns that Committee counsel's views of the case may result in the Committee, on the one hand, and the Defendants and the insurance carriers, on the other, not being able to reach an acceptable settlement figure at the mediation, based on the actual strengths (and in this case, weakness) of the asserted claims. Fortunately, the Movants' concern in this regard is counterbalanced by our cautious optimism that Judge Drain's skills as a mediator will convince the parties to reach a settlement.

30. In sum, TKD and the Defendants are committed to the voluntary mediation process. The use of the words "significant reservations" did not have the meaning ascribed to them in the Objection, but related to circumstances beyond our control, i.e. the Committee's and their counsel's conduct immediately preceding the filing of the Motion.[9]

### (vi)   The Committee Does Not Have The Right to "Vet" TKD's Invoices

31. The Committee seeks to review TKD's invoices on a monthly basis so that "the Committee can be kept apprised of the monthly burn rate of the policy and other protections that ensure transparency and assurance that appropriate caps can be put in place and enforced." See Objection, ¶ 38.

32. The Movants do not believe that any vetting process is appropriate or consistent with the law. First, as noted, the Insurance Carriers have every reason to object to unchargeable fees against the Policy. At the moment, there should be no concern because the Tentative Settlement achieved a resolution of all issues with the Entities, and the only fees currently being charged relate to the services relating to the mediation. Second, TKD's fees for a 13 month period are less than $185,000 in the aggregate. There is no question TKD is acting reasonably and efficiently in connection with the defense of the D&O Claims, and if the Committee believes differently, they should be required at the upcoming hearing to disclose to the Court how much in legal fees they have charged in connection with the D&O Litigation. Third, TKD objects to delivery of confidential invoices to the Committee, as requested for a number of reasons. By definition, TKD will be required to expend additional resources to redact sensitive information, and frankly, based on our experience with Committee counsel, we have reason to believe that no matter what TKD charges, the

---

[9] There was additional unprofessional conduct by Committee counsel that caused us to use the words "significant

Committee will expend significant estate resources objecting to invoices, even where the Committee's professionals charge a greater amount than TKD.

33.   Finally, there are simply no cases that require a vetting process suggested by the Committee in which a plaintiff is allowed to review opposing counsel's invoices and gets to pre-approve those invoices before an insurer makes payment. The best that the Committee could come up with is the Committee's suggestion in footnote 17 of their Objection that the Court in MF Global found that a reporting requirement was necessary, after a meet and confer session. However, a close review of the Court's decision at MF Global, 469 B.R. at 197 makes clear that the SIPA Trustee, Chapter 11 trustee, and two insurers agreed, in principle, to establishing procedures for monitoring expenditures, as opposed to being required by the Court to establish a monitoring program. That agreement in principle was reflected in the Court's order entered two weeks after the decision. Of course, the actual order is not included in the Committee's Objection. With regard to a consensual monitoring process, this Court included the following language in its order:

> Upon the advancement and/or payment of any defense costs pursuant to the Policies, but no more frequently than on a monthly basis beginning one month following entry of this Order, the Insurers shall provide written notice (a) to counsel for the Debtors' Chapter 11 Trustee, (b) counsel for the SIPA Trustee, and (c) counsel for the Statutory Committee of MF Global Holdings Ltd and related Chapter 11 Debtors reporting (i) the total amount or paid by the Insurers under the Policies during that reporting period; (ii) the total amount advanced to date under such Policy; and (iiii) the remaining available limits under the Policies. No further disclosure relating to advances or payments under the Policies shall be required without further order of the Court, with respect to which all parties reserve their rights.

See MF Global Order, ¶ 3. A copy of the Court's order is annexed as **Exhibit E**. As the Court can see, there was no requirement in MF Global for any party to be provided copies of invoices but the agreed upon language in the order related solely to after-the-fact monitoring of legal fees and expenses.

---

reservations" in our Motion, we can highlight, if required to do so at the October 14, 2015 hearing

34.     Therefore, in light of all these reasons, there is no need for a vetting process as suggested by the Committee, which requires TKD to provide invoices to the Committee on a monthly basis, as a prerequisite for payment of its Defense Costs.

### RESPONSE TO SUGGESTED RESOLUTION

35.     The Committee's suggested alternative proposals in the Objection, (i) include an arbitrarily low cap for Defense Costs, (ii) require an expensive "vetting" process by the Committee, and (iii) require the Defendants to waive service of process arguments. The proposals are not acceptable for reasons stated herein. The Movants were willing to enter into a consensual stipulation and order capping fees at an appropriate amount (without any vetting process) many months ago, but in light of Committee's conduct, including its decision to force the Movants to file a Motion, coupled with its incendiary Objection, we are less inclined to consensually resolve this issue. We look forward to a ruling from the Court on October 14, 2015. There is no logical reason to force TKD to incur additional fees against the wasting Policy to defend its right to payment of Defense Costs under the Policy. As importantly, there is no reasonable basis to allow Committee counsel to waste even more actual estate cash on this issue. The Motion should be approved in its entirety.

**WHEREFORE**, the Movants respectfully request that the Court deny the Objection and grant the Motion in its entirety, and grant such other and further relief as may be just and proper.

Dated: New York, New York
       October 12, 2015

                                          **TARTER KRINSKY & DROGIN LLP**
                                          *Attorneys for Defendants*

                                          By:  /s/Rocco A. Cavaliere
                                                Scott S. Markowitz
                                                Linda Roth
                                                Rocco A. Cavaliere
                                                1350 Broadway, 11th Floor
                                                New York, New York 10018
                                                (212) 216-8000